[No. 33232.   Department Two.   April 5, 1956.]

JOSEPH H. RYAN *et al., Appellants,* v. FREDERICK A. RYAN *et al., Respondents.*[1]

[1]Reported in 295 P. (2d) 1111.

*Allen, DeGarmo & Leedy*, for appellants.

*Lenihan & Ivers*, for respondents.

WEAVER, J.—Plaintiff appeals from a judgment dismissing his action for twenty thousand dollars.

For a number of years, Ryan Furniture Company and Grote Rankin Furniture Company, in Seattle, were owned and operated by three brothers, Joseph H. Ryan (plaintiff), Frederick A. Ryan, and William E. Ryan (defendants), under an oral partnership agreement. Plaintiff managed the Grote Rankin Furniture Company.

January 8, 1954, the partners signed a written dissolution agreement which, in so far as it is pertinent to our inquiry, fixed the liquidating cash value of the partnership assets at two hundred seventy thousand dollars and provided that "the cash value of each of the three shares is Ninety Thousand ($90,000.00) Dollars." The dissolution agreement further provided:

"That Joseph H. Ryan [plaintiff] shall receive as his share Seventy Thousand ($70,000.00) Dollars in cash upon

the execution of this Agreement, together with a promissory note of Frederick A. Ryan and William E. Ryan [defendants] in the sum of Twenty Thousand ($20,000.00) Dollars, payable one year from the date hereof with interest at four percent (4%) per annum."

Defendants were to continue the furniture business.

Defendants pleaded and offered evidence, which the trial court admitted, that on November 17, 1953, plaintiff, with the consent of his brothers, had drawn twenty thousand dollars cash from the Grote Rankin Furniture Company as the initial payment on his share of the partnership assets. Defendants contend that this sum, together with the fifty-thousand-dollar check plaintiff drew on January 8, 1954 (the date the dissolution agreement was signed), paid plaintiff in full for his share of the partnership assets. The promissory note has been paid.

Plaintiff argues that the dissolution agreement of January 8, 1954, is plain, clear, and unambiguous; that the consideration expressed is more than a mere recitation—it is contractual in character; that evidence of the alleged twenty-thousand-dollar initial payment on November 17, 1953, varies the terms of a written instrument by parol and extrinsic evidence and is inadmissible.

Where the consideration consists of a specific and direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol evidence than any other part. A party has the right to make the consideration of his agreement the essence of the contract. When this is done, the provision, as to consideration, stands on the same plane as other provisions of the contract. They are conclusive and immune from attack by parol or extrinsic evidence.

In *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183 (1916), the court illustrated this principle by quoting from *Jackson v. Chicago, St. Paul & Kansas City R. Co.,* 54 Mo. App. 636, 644 (1893), as follows:

"Suppose the consideration in a deed should be: 'In consideration of the sum of one thousand dollars to be paid to me in beef cattle weighing not less than one thousand two

hundred pounds each, at five cents per pound.' Would it be contended that a consideration thus expressed contractually could be orally shown to be other than as expressed?
. . .

"But money may also be contracted for as the consideration in a written contract. And when the intention to so contract is disclosed by the written instrument, no other or additional consideration can be shown. Thus, suppose that the consideration was stated in the written contract to be 'one thousand dollars to be paid as follows: Two hundred dollars in six months from date without interest; four hundred dollars in twelve months from date with three per cent. interest; and four hundred dollars in eighteen months from date with ten per cent. interest from maturity; all to be secured by a mortgage' on certain described property. Could it be shown in contradiction to this that the consideration agreed upon was fifty head of cattle or an additional sum of money? Clearly not. The reason is that it has been contracted otherwise by the parties and that contract has been reduced to writing."

▮ The proffered evidence does not tend to vary the written agreement. It does not change the amount of the contracted consideration nor change performance from one method to another. On the contrary, it recognizes the efficacy of the contract and tends to prove, if believed, that the contract was performed according to its terms.

Plaintiff's actions disclose that it was not the intent of the parties that he receive "cash" for his interest when the dissolution agreement was signed. Instead, he received the "equivalent of cash" when he drew his own check for fifty thousand dollars on January 8, 1954. Did he receive any other "equivalent of cash"?

There is no explanation in the record why plaintiff withdrew twenty thousand dollars from Grote Rankin Furniture Company account on November 17, 1953, except his testimony that he drew it "because I wanted $20,000." Previous to this, none of the partners had ever drawn a substantial sum, in excess of the amount drawn by the others, except one time when one of them purchased an automobile. This particular withdrawal was equalized at the end of the year.

Contrary to the general practice of former years, plain-

tiff's twenty-thousand-dollar withdrawal of November 17, 1953, was not equalized among the parties at the end of the fiscal year. *Prior to any dispute among the partners,* defendant Fred Ryan informed the accountant in charge of the partnership books that the twenty thousand dollars was the initial payment on the dissolution of plaintiff's partnership interest. It was posted in the partnership books as follows:

"Deferred Drawings
"Drawings Account—J. H. Ryan [plaintiff]
   "To record initial payment to J. H. Ryan covering purchase of his partnership interest by F. A. & Wm. E. Ryan effective as of date 1/2/54."

It appeared in the balance sheet of the partnership's 1953 Federal income tax return as an asset, and in the accountant's balance sheet as an asset described as a "deferred drawing."

January 8, 1954, when the dissolution agreement was signed, a cancellation of plaintiff's deferred drawing was effected, and it no longer represented a partnership asset. On that date, plaintiff received a twenty-thousand-dollar credit as truly as he received a fifty-thousand-dollar check "as cash" in payment of his partnership interest.

█ Is evidence of the twenty-thousand-dollar check inadmissible because it was delivered *prior* to the date of the written dissolution agreement? We think not.

We are supported in this conclusion by *Harstad v. Olson,* 57 Wash. 264, 106 Pac. 741 (1910). Therein, plaintiff argued that the parol evidence rule barred certain evidence that defendants had paid a portion of the agreed consideration. Subsequent to part payment, the parties had reduced their contract to writing, which provided that certain sums "were to be paid" upon completion of the work. This court said:

"Anything that would show a partial payment, whether before or after the contract was reduced to writing, was material, and has never, so far as we have been able to inform ourselves, been held to be a variation of the terms of a written contract by parol. It is not a question of contract—

upon that the parties are agreed—but of payment, or a bar to recovery."

Plaintiff's assignments of error, based upon the proposition that evidence of payment antedating the written instrument varied the terms of a written agreement, are not well taken.

■■ It is unnecessary to set forth further evidence. It is sufficient to point out that plaintiff's testimony and the testimony of his brother, Fred Ryan, concerning the dissolution of the partnership and the circumstances surrounding the twenty-thousand-dollar withdrawal by plaintiff, are contradictory. Where there are only two witnesses to a conversation, one of whom asserts and the other denies, the trial judge may find that the acts complained of have not been established by a preponderance of the evidence, or, believing one and disbelieving the other, may find that the acts complained of did or did not happen. *Braun v. Braun,* 31 Wn. (2d) 468, 470, 197 P. (2d) 442 (1948). Under these circumstances, we cannot say that the evidence preponderates against the findings of the trial court, and we will not disturb them.

In addition, the following lends credence to the findings of the trial court: (a) there is no other explanation of why plaintiff drew twenty thousand dollars cash on November 17, 1953; (b) the instructions to the accountant, given at a time when there was no controversy between the parties, is indicative of the interpretation given to the preliminary transaction by one of the defendants; and (c) plaintiff drew the check for fifty thousand dollars, payable to himself, on January 8, 1954, when there was more than eighty thousand dollars in the partnership bank account.

Defendants' trial counsel testified. Objections that his testimony violated a professional and confidential relationship between counsel and plaintiff were overruled. No assignment of error is based upon this ruling.

Upon appeal, plaintiff's counsel urges in his brief

" . . . that it was highly improper . . . to appear as counsel for respondents [defendants] upon the trial of this action and then present their own testimony upon the

vital factual issue in the case, without withdrawing from the case."

Defendants' trial counsel argues that

". . . the irreconcilable conflict between Canon of Professional Ethics 19, 34A Wn. (2d) 133 and General Rule of Superior Court 12, 34A Wn. (2d) 115. *State v. Fackrell,* [*Jr.,*] 44 Wn. (2d) 874, 876, should be clarified, for there is nothing unusual about an attorney so testifying."

█ We agree with counsel for defendants that there is nothing unusual "about an attorney so testifying." A lawyer is not disqualified as a witness. His testimony is admissible, if otherwise competent. However, when he takes the witness stand on behalf of his client and testifies to anything other than merely formal matters, he stakes his oath and his word against the oath of his client's adversary. When this occurs, he becomes something more, in the eyes of the court or jury, than a professional representative of his client's interests.

Superior Court Rule 12 and Canon of Professional Ethics 19 are designed to chart the lawyer's course in this delicate situation.

The rule provides:

"If an attorney shall offer himself as a witness on behalf of his client and give evidence on the merits, he shall not argue the case to the jury, unless by permission of the court." 34A Wn. (2d) 115.

The canon provides:

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." 34A Wn. (2d) 133.

█ The canons of professional ethics, having been adopted and promulgated by this court as the rules which govern professional conduct of those practicing law in this jurisdiction, are of dignity and status equal to any other rule this court has adopted.

█ We see no conflict between the rule and the canon

we are asked to consider. *State v. Fackrell, Jr., supra,* well illustrates their acceptance and application. When circumstances developing at the trial made it necessary for counsel to testify, he did so. Thereafter, he left the trial of the case to other counsel. The record does not disclose that he requested permission to argue the case to the jury.

Although a canon of ethics may appear primarily pertinent in direct disciplinary proceedings, it does not follow that counsel is free of its direction when representing the interests of others. On the contrary, the canons of ethics govern continuously every phase of counsel's professional conduct. When that conduct is not an issue going to the merits of the cause, the canon, to a great extent, must be self-imposed by counsel.

If counsel chooses not to recognize the amenities which the tenents of his profession establish, then, except in aggravated and unusual situations, the client should not be penalized because of his counsel's conduct. Annotation: 118 A. L. R. 954. On the other hand, should a breach of a canon of professional conduct be so flagrant that it can be said, as a matter of law, that the breach prevented a fair trial, a court should not hesitate to hold such breach of conduct prejudicial error and grant a new trial. The present case, however, does not require the application of this rule.

Disregarding the testimony of defendants' trial counsel, we conclude that plaintiff's evidence still does not preponderate against the findings of fact made by the trial court.

The judgment is affirmed.

Hamley, C. J., Mallery, Hill, and Rosellini, JJ., concur.