[No. 34525. Department Two. May 21, 1959.]

THE STATE OF WASHINGTON, *Respondent*, v. BILLIE MELVIN COGSWELL, *Appellant*.[1]

[1]Reported in 339 P. (2d) 465.

*Walthew, Warner & Keefe*, for appellant.

*Charles O. Carroll, Joel A. C. Rindal*, and *Anthony Savage, Jr.*, for respondent.

WEAVER, C. J.—There is undisputed evidence, which, if believed by the jury, supports the conclusion that Billie Melvin Cogswell, defendant-appellant, shot his wife, Florine, the bullet passing through her body and injuring their small daughter, Christine, whom she was shielding; shot at, but missed his mother-in-law, Mrs. Gaukroger, then "pistol-whipped" her; and attacked his father-in-law with a knife or dagger. Defendant and his wife were having marital difficulties. Mrs. Cogswell had commenced an action for

divorce, and she and their daughter were staying with Mrs. Cogswell's parents.

In the opening brief, counsel for defendant states that ". . . the appellant clearly and unequivocally conceded that the *acts* of the morning of October 26, 1956, did occur."

Defendant was charged with three counts of assault in the first degree, allegedly committed against his wife, his daughter, and his mother-in-law; and one count of assault in the second degree, allegedly committed against his father-in-law. To these charges, defendant pleaded "not guilty" and "not guilty by reason of mental irresponsibility," in accordance with the provisions of RCW 10.76.020.

After a six-day trial and almost eight hours of deliberation, the jury found defendant guilty on all counts.

Six of defendant's seven assignments of error are directed to all counts. The other applies only to count III, which charges assault with intent to kill the child, Christine. Analyzed in the order in which we will discuss them, the assignments of error appertain to (1) alleged misconduct of the deputy prosecuting attorney during trial; (2) five instructions given to the jury; and (3) exclusion of certain testimony.

Defendant contends that twenty-three remarks, made by the deputy prosecuting attorney in the course of a six-day trial, were contrary to certain canons of professional conduct, were prejudicial, and deprived him of a fair and impartial trial in violation of the state and Federal constitutions. To fourteen of the incidents, counsel for defendant made no objection, but now claims that to have made objection would have prejudiced his cause.

■ As a general rule, this court will not consider an assignment of error based upon alleged misconduct of a prosecuting attorney unless the aggrieved party has made timely objection and requested an instruction that the jury disregard the incident. *State v. Taylor*, 47 Wn. (2d) 213, 287 P. (2d) 298 (1955). An exception to the rule is found in those cases where the misconduct has been so flagrant

that an instruction could not cure it. *State v. Case,* 49 Wn. (2d) 66, 72, 298 P. (2d) 500 (1956), and cases cited. If such be the case, then the aggrieved party has not received a fair trial. See *Ryan v. Ryan,* 48 Wn. (2d) 593, 600, 295 P. (2d) 1111 (1956).

Some of the questioned incidents were neither errors of law nor breaches of the canons of professional conduct; some were, perhaps, not in good taste, but innocuous. None were so flagrant that they could not have been cured by an instruction. When read in context, there is nothing to support the conclusion that defendant did not have a fair trial by reason of the questioned incidents. We find no merit in defendant's first assignment of error.

Defendant's second assignment of error is directed to instruction No. 13, which defines assault as "an *attempt* to use force," and points out that "apprehension created in the mind of the person assaulted" is an element of assault. It appears that the instruction is almost a verbatim extract of the law announced in *State v. Rush,* 14 Wn. (2d) 138, 127 P. (2d) 411 (1942).

In the trial court, defendant excepted to this instruction on two grounds: First, that there is no charge in the instant case of an "*attempt* to use force," and second, the instruction fails to differentiate between first and second degree assault.

On appeal, defendant now contends that "apprehension created in the mind of the person assaulted" is improperly included and over-emphasized.

An assignment of error against a given instruction, predicated on a theory not submitted to the trial court at the time exception is taken thereto, will not be considered on appeal. *State v. Lyskoski,* 47 Wn. (2d) 102, 111, 287 P. (2d) 114 (1955).

The day before the shooting, defendant telephoned his estranged wife at her mother's home and asked in which bedroom she was sleeping. Mrs. Cogswell advised her husband that she and their daughter slept in twin beds in a certain room.

The day of the shooting, the child awakened about 7:00 a. m. and went downstairs to get her dog. She returned to the bedroom about 7:15 a. m. A few moments later, defendant entered the bedroom, closed the door behind him, and pulled a revolver from his belt. Mrs. Cogswell grabbed the child. Defendant fired, the shot struck Mrs. Cogswell in the back, passed through her body, and struck the child.

Defendant's third assignment of error is directed to instruction No. 15, which states:

"I instruct you that if you find that the defendant, with intent to kill a particular individual, shot or struck at that individual with a firearm, and by mistake, accident or inadvertence the charge or blow also took effect upon a second individual, in the eyes of the law the intent to kill was transferred to the second individual as well; and the defendant is just as guilty as if he had originally intended to kill the second individual also."

Defendant argues that the instruction is erroneous because, in the absence of statute, the doctrine of transfer of intent is not applicable to specific intent crimes. This facet of the case springs from an unusual factual situation. The twin beds occupied by Mrs. Cogswell and the daughter were next to each other.

Mrs. Cogswell testified that

" . . . I grabbed Christine and pulled her to my bed and laid over her, and then he shot me."

Counsel for the defendant, however, when propounding a hypothetical question to one of the experts, stated

"That she either threw herself across the child Christine in the adjacent bed—these were twin beds which were pushed next to each other—or else pulled the child over and put her body across the child. That there was a shot fired."

The issue raised by the instruction appears to present a question of first impression in this jurisdiction. Two conflicting rules are well stated in 26 Am. Jur., Homicide, § 602, p. 580:

"There is a sharp difference of opinion as to whether a conviction of assault with intent to kill may rest upon proof

of intent against any person generally, or whether it must be against the person assaulted. According to one group of decisions, the very essence of the crime is the specific intent to take the life of the person assaulted, and it is vigorously maintained that a person who, while shooting at or assaulting another with intent to kill him, unintentionally injures a third person is not guilty of the offense of assault with intent to kill the third person. Many courts, however, deem the rule stated to be impracticable in the administration of the law, and its foundation to be too subtle to be adopted with safety. These courts assert that although the defendant inflicted the injury on a third person unintentionally, he may nevertheless be found guilty of an assault with intent to kill or murder. Under this rule, if A shoots at B and hits C, he may be convicted of an assault with intent to kill B. Even under the former view, a mistake in the identity of the person assaulted does not relieve of responsibility. Thus if A, intending to murder B, shoots and wounds C, he is guilty of an assault with intent to murder C."

Factually, the instant case is not within the orbit of either rule set forth in 26 Am. Jur. 580, *supra*. This is not a case where A shoots at B with intent to kill, but, by mistake, accident, or inadvertence, misses A and injures C. Whom did defendant assault with intent to kill? Was it his wife, his daughter, or both at the same time? There is evidence, if believed by the jury, that defendant intended to kill both of them, for one of the policemen testified that defendant told him

" . . . he only took three shells with him, three rounds of ammunition, and he was going to use one on his wife, one on his daughter and one for himself";

that the mother and daughter were close together; that they were only a few feet from defendant, who was standing at the foot of the bed; that *both* were within the line of fire of defendant's gun; that the same shot from defendant's .38-caliber revolver, fired at close range, hit both human beings. That the shot pierced one and hit the other is of no consequence. The situation is the same as if defendant had used a scatter gun or thrown acid that covered both.

██ Under count III of the information, there is sufficient evidence, together with proper instructions, to support de-

fendant's conviction of assault with intent to kill his daughter.

Instruction No. 15 may be superfluous, but we do not believe it was prejudicial error *under the facts of the instant case,* for the jury could have found there was "intent to kill . . . the second individual" be it by transfer of intent or not.

RCW 9.11.010 provides:

"Every person who, with *intent to kill a human being,* or to commit a felony upon the person or property of the one assaulted, or of another—

"(1) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; . . . shall be guilty of assault in the first degree . . ." (Italics ours.)

We leave, to the proper case, the determination of whether the doctrine of transfer of intent is applicable in this jurisdiction to prosecution for assault with intent to kill.

The defendant contends that instruction No. 28 is erroneous because it improperly states the law of relationship of intoxication to intent and constitutes a comment on the evidence. We do not agree. The first paragraph of the instruction is a verbatim statement of RCW 9.01.114. The second paragraph is paraphrased from an instruction approved by this court in *State v. Miller,* 177 Wash. 442, 462, 32 P. (2d) 535 (1934). Further, instruction No. 28 is not a comment on the evidence. In no manner does it indicate to the jury the personal belief of the trial court. *State v. Rio,* 38 Wn. (2d) 446, 452, 230 P. (2d) 308 (1951), and cases cited.

Defendant's sixth assignment of error is directed to instruction No. 24, which states:

"You are instructed that it is not enough that the defendant show merely that he was mentally unbalanced at the time of the commission of the offense charged, but he must prove that he was laboring under such a defect of reason, from disease of the mind, that he was unable to distinguish right from wrong with respect to the acts charged

before you find the defendant not guilty by reason of insanity. Any person may be sick or diseased in mind and yet be able to distinguish right from wrong with respect to a particular act."

Specifically, defendant urges that the use of the phrase "disease of the mind," without further defining it, left the jury without a "standard or guide by way of instruction and [it] was turned loose in the fields of speculation and conjecture."

■ ■ We do not consider the instruction prejudicially erroneous. In *State v. Davis,* 6 Wn. (2d) 696, 708, 108 P. (2d) 641 (1940), this court approved an instruction that was substantially the same as instruction No. 24. It included the clause "mind was diseased." In *State v. Collins,* 50 Wn. (2d) 740, 750, 314 P. (2d) 660 (1957), this court approved an instruction that required defendant to prove that

" '. . . his mind was diseased to such an extent that he did not have the ability to distinguish between right and wrong with respect to the act charged.' "

We point out that instruction No. 24 is not a complete statement of the "right-and-wrong test" as adopted in this jurisdiction: The instruction does not require defendant to prove, in support of his defense of insanity or mental irresponsibility, that "he did not have the mental capacity to know the nature and quality of his act."

This court said in *State v. Collins, supra:*

"The instructions given, in so far as they did not accurately state the M'Naghten rule, were favorable and not prejudicial to the defendant, in that they omitted one of the elements that the defendant could have been required to prove in order to establish his defense of mental irresponsibility."

Defendant's sixth assignment of error is without merit.

Instruction No. 26 is the last instruction questioned by defendant. It states that irresistible impulse is not insanity and is not a defense. It then defines irresistible impulse in the terms found in 14 Am. Jur. 793, § 35.

■ A psychologist and a psychiatrist, testifying for defendant, discussed his "control system" and his "ability to control." This, we believe, justified the instruction on irresistible impulse, and, as given, is a correct statement of the law in this state. *State v. Odell,* 38 Wn. (2d) 4, 22, 227 P. (2d) 710 (1951); *State v. Maish,* 29 Wn. (2d) 52, 56, 185 P. (2d) 486, 173 A. L. R. 382 (1947).

Dr. Ralph M. Stolzheise, a physician practicing psychiatry, examined defendant more than four months after the incident on which the state's charges are based. He testified at length concerning his analysis of defendant. On two occasions, he testified, without objection (as had a psychologist), that defendant did not have the mental capacity "to perceive, on October 27th, the difference between right and wrong."

Dr. Stolzheise's direct testimony concluded with the following:

"Q. Doctor, in your opinion, on October 27th of 1956 was he [defendant] capable of forming the specific intent to commit a crime? MR. ANDERSEN: Object to the form of that question. I object to the question as being an improper question to ask an expert witness, if Your Honor please. THE COURT: Sustained. MR. CASEY: I have no further questions of the doctor. THE COURT: Any cross? MR. ANDERSEN: Yes."

■ The answer to defendant's assignment of error directed to the exclusion of this evidence is found in *State v. Farley,* 48 Wn. (2d) 11, 20, 290 P. (2d) 987 (1955), wherein this court said:

" . . . Counsel was trying to rebut the inference of premeditation and intent, which could be drawn from the circumstances of the killing, by having the doctor testify as to a fact with regard to specific mental reaction of appellant at the time he committed the crime. Since the doctor was not present at the murder, he had no testimonial knowledge of appellant's appearance, statements, acts, and demeanor, or the circumstances surrounding the crime. His diagnosis of appellant's state of mental health, as re-

vealed by subsequent examinations, cannot be related to the particular instant of the crime.

" . . .

" . . . Accordingly, a layman *who sees the commission of a crime* can describe the acts, the appearance, and demeanor of a defendant, from which inferences as to a defendant's mental processes may be drawn, but a doctor who was not present at a crime has no testimonial knowledge of the circumstances needed to support such inferences."

The authorities cited by defendant are not apposite, for, in all of them, the witness had some testimonial knowledge of the demeanor of the defendant at the proximate time of the commission of the offense.

The judgment is affirmed.

HILL, DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

---

July 29, 1959. Petition for rehearing denied.