[No. 35369. Department Two. September 1, 1960.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE C.
MATTOON, *Appellant.*[1]

*Hennessey, Curran & Bentley (Ernest A. Bentley,* of
counsel), for appellant.

[1]Reported in 354 P. (2d) 908.

*John J. Lally, Howard A. Anderson,* and *George A. Kain,* for respondent.

DONWORTH, J.—July 9, 1959, appellant was charged by information with the crime of grand larceny, allegedly committed by breaking into a parked automobile and taking property of another having a value in excess of seventy-five dollars.

Appellant, being an indigent person, had defense counsel appointed for him by the trial court on August 3, 1959. A list of the state's witnesses was served on appellant's counsel on August 6, 1959, and filed on August 12, 1959. On August 7, 1959, the case was set for trial for September 10, 1959.

August 12, 1959, the state filed a motion, supported by affidavit, for a court certificate requesting that a certain out-of-state witness be summoned from Oregon, pursuant to RCW 10.55.060 (known as the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings), and, also, a motion and affidavit were filed for an order directing the auditor to issue a warrant to cover necessary travel expenses and the witness' fee, as provided by RCW 10.55.060. On the same day, the trial court granted both of the motions.

September 10, 1959, the case came on for trial. The state informed the trial court that its out-of-state witness was not available, and the state requested that the trial be continued. The trial court, after hearing arguments for both sides, postponed the date of trial to September 21, 1959.

September 15, 1959, appellant filed a motion for an order to show cause requiring the sheriff and the prosecutor to show cause why the action should not be dismissed because of the state's failure to bring him to trial within sixty days after the filing of the information, as required by RCW 10.46.010. On the following day, appellant also filed a petition for a writ of *habeas corpus* based upon the same grounds.

September 16, 1959, the trial court, after examining the affidavits of the parties and hearing their respective argu-

ments, entered an order denying the motion to dismiss and further denying the petition for a writ of *habeas corpus*.

The case came on for trial on September 21, 1959, before the court sitting with a jury. On September 22, 1959, the jury returned a verdict of guilty. Appellant then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was heard and denied. Thereafter, the trial court entered judgment and sentence upon the verdict. This appeal followed.

Upon appellant's motion, the trial court ordered that he be furnished a free transcript of the proceedings therein for the purpose of appealing to this court.

The assignments of error are: (1) The trial court erred in denying appellant's motion for dismissal of the action; and (2) the trial court erred in denying appellant's motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

■ With respect to assignment of error No. 1, appellant relies upon RCW 10.46.010, which provides as follows:

"If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, *unless good cause to the contrary is shown*." (Italics ours.)

Appellant does not contend that there was an unnecessary delay in setting his case for trial on September 10, 1959 (which was 63 days after July 9, 1959, the date the information charging him with grand larceny was filed). His argument here is that the trial court abused its discretion in continuing the case until September 21, 1959, at the request of the state.

Thus, the sole question before us is whether or not "good cause" was shown for postponing appellant's trial to September 21, 1959.

The record shows that, during the first part of September, the deputy prosecutor inquired of the trial court whether or not a court would be available to hear appel-

lant's case on September 10, 1959. The purpose of this inquiry was that the state did not want to be in the position of having Mr. Harold Auld, the out-of-state witness, travel all the way to Spokane only to be advised that the case would have to be postponed because no court was available to hear the case.

The trial court advised the deputy prosecutor that Mr. Gilpin, bailiff of the presiding court, was in a better position to know the condition of the court docket than the trial court was.

After receiving this information, the deputy prosecutor, on September 8th, inquired of Mr. Gilpin as to whether or not a court would be available on September 10, 1959, to hear appellant's case. Mr. Gilpin stated that he did not feel that the cases presently being tried in the Spokane county superior courts would be finished by that time. He further advised that no cases would be tried during the week of September 14 through September 18, 1959, and that the first possible date the case could be assigned out for trial was September 21, 1959.

Thereafter, the state notified Mr. Auld that he should appear in Spokane on September 21st, instead of September 10th.

As matters subsequently developed, a court was in fact available on September 10th to hear appellant's case. However, after the state advised the trial court of its conversation with Mr. Gilpin and of its notification to Mr. Auld that his presence in Spokane would not be necessary until September 21st, the trial court postponed the date of trial to September 21, 1959.

We are clearly of the view that no abuse of discretion is shown here and that the state presented "good cause" for having the trial postponed. In denying appellant's motion to dismiss and his petition for a writ of *habeas corpus*, the trial court stated:

"Here, it seems to me the question is whether or not defendant's Constitutional rights to a speedy trial have been violated, and it is my conclusion or finding that they haven't. The statute referred to does say that the case

shall be dismissed if it is not brought to trial within sixty days, unless good cause to the contrary is shown, and the Court finds that there is good cause to the contrary, because first of all, the Prosecutor has done everything within his power to have the case set at the earliest possible time, and in this case there is no contention that the case originally was not set soon enough. It was set down for September 12th [10th] by the presiding Judge, who set the docket, and the only reason that it wasn't tried on that date, as set forth in the affidavit of the Prosecuting Attorney, that it appeared that the case would not be sent out because of the courts being occupied by other cases already being in the process of trial, so it is not a case of the Prosecutor not taking initial action to afford the defendant a speedy trial; it is rather a case in which action was taken to afford the defendant a speedy trial within the sixty day period, and that the delay of ten days was due to the fact that it appeared the case would not be sent out by the presiding department on that date set because of other cases that were set ahead of it occupying the courts, and the date of September 21st was fixed by the presiding department for the case to be actually sent out, because it would be the first available date after that that there would be a court to hear the case.

"Now, that under all of the circumstances, in my opinion, satisfies the defendant's right to a speedy trial, the Constitutional guarantees of it, and the statute which provides for the dismissal unless good cause is shown that it could not be tried within sixty days.

"There is not the situation that counsel argues for the defendant very earnestly that where there is a lack of a witness available and the Prosecutor seeks the continuance. It is true that the witness was not here on September 10th, but he was available to be here on September 10th, as I understand the situation, if it were known reasonably ahead of that time that a court would be available, and considering that he was an out-of-state witness, it seems just proper procedure that that would be ascertained as far as possible definitely so that he would not be brought over here unnecessarily, taking his time and causing the expense of bringing him a second time if the case was not going to be assigned out on that date.

"The other cases, I think, as Mr. Anderson points out, were cases where the Prosecutor was looking for a witness, and it was a question of due diligence in finding the witness or having the witness available. It is not the

same situation as this case because the witness was advised and the Prosecutor and defendant were advised a reasonable time before that two days would be enough to have the witness here, and so I must find that good cause has been shown, the matter being on the calendar, the defendant being afforded an opportunity to have his case assigned out the first day that court is available now for a jury trial, namely, the 21st of September, and therefore, the motion to dismiss the prosecution will be denied and the petition for a writ of habeas corpus will likewise be denied."

We have quoted the trial court's ruling in its entirety as we feel it very ably and fully disposes of appellant's contention that no "good cause" was shown to exist here.

In *State ex rel. James v. Superior Court,* 32 Wn. (2d) 451, 202 P. (2d) 250 (1949), this court pointed out:

" . . . . It may very well be that situations might arise where, because of the condition of the court calendar and the press of business, it would be impossible for the state to bring the accused to trial within sixty days. . . . "

In the case of *State v. Brooks,* 4 Wash. 328, 30 Pac. 147 (1892), cited by appellant, this court refused to grant the defendant a continuance for the purpose of obtaining the attendance of a witness residing in another county as there was no showing that the defendant had exercised due diligence to procure the attendance of the witness. Such is not the case here. The absence of the state's witness in the present case on September 10th was attributable to an honest mistake of the bailiff as to when a court would be available and not to any lack of diligence on the state's part.

Assignment of error No. 2 is based upon the contention that certain remarks by the deputy prosecutor in his closing argument to the jury constituted prejudicial misconduct.

Robert S. Goodson, the police officer who arrested appellant, testified at the trial that, on the night the larceny was committed, he observed appellant with the stolen property in Manito Park at approximately 1:50 a.m. Appellant testified that he left downtown Spokane at ap-

proximately 1:40 a.m., drove his car south on Division street to Grand Boulevard and into Manito Park, and stopped alongside of some property scattered by the road (which was later identified as being the stolen property).

With respect to the time element, appellant's counsel, in his closing argument to the jury, stated:

"I don't know how long it takes to find the car, break into it, and take out several heavy and bulky items, store them in yours, and drive away, but I assume it takes quite a while. It seems to me it would take longer than twenty minutes or even half an hour to accomplish something like that. *I know in breaking into my own car when I leave the keys in the car it would take longer than that.* So far as the time element is concerned there is insufficient time and it is inconsistent." (Italics ours.)

In effect, appellant's counsel argued that, since it takes *him* over thirty minutes to break into a car, it would also take appellant over thirty minutes to do likewise. This, of course, might logically follow if appellant were as inexperienced as his counsel at breaking into cars.

In rebuttal to the above-quoted argument, the deputy prosecutor stated in his closing argument to the jury:

"Mr. Bentley mentioned the time it would take to break into a car and take some items out of the car. He also mentioned that the time he locked his keys in the car it took him quite a while to break into the car. I certainly agree with his statement that it would take the average person quite a bit of time to break into a car, *but it doesn't take an experienced man very long to break into a car and to remove property from it.*" (Italics ours.)

■ It is argued that the italicized portion of the above-quoted argument caused the jury to assume that appellant was experienced at breaking into automobiles, whereas there was no evidence that appellant had ever been previously convicted of breaking into an automobile.

The argument is without merit. The remarks of the deputy prosecutor no more warranted the jury in assuming that appellant was *experienced* in breaking into automobiles than the remarks of appellant's counsel warranted the jury in assuming that appellant was *inexperienced* at breaking into

automobiles. The rebuttal argument simply stated that it does not take an experienced man very long to break into a car. It was not argued that appellant had had previous experience in breaking into cars either for lawful or unlawful purposes. That portion of the rebuttal argument that appellant finds objectionable was invited by the remarks of his own counsel and was a perfectly proper response thereto.

 Even assuming that the remarks of the deputy prosecutor did constitute misconduct, it was certainly not so flagrant that an instruction would not have cured it. In such a case, it is the duty of the aggrieved party to promptly object and request an instruction that the jury disregard the matter. *State v. Cogswell*, 54 Wn. (2d) 240, 339 P. (2d) 465 (1959). Appellant did neither here. He shall not be heard to complain now.

The judgment and sentence of the trial court is affirmed in all respects.

MALLERY, FINLEY, ROSELLINI, and OTT, JJ., concur.