[No. 35250. *En Banc.* September 28, 1961.]

THE STATE OF WASHINGTON, *Respondent,* v. ANDRES LA PORTE, *Appellant.*\*

*Reported in 365 P. (2d) 24.

*T. Patrick Corbett* (of *Corbett & Siderius*), for appellant.

*Charles O. Carroll, Hugh R. McGough,* and *Jack B. Regan,* for respondent.

WEAVER, J.—This appeal presents four assignments of error: first, defendant was twice placed in jeopardy on Count I of the information; second, certain statements made during trial by the deputy prosecuting attorney constituted prejudicial error; third, four instructions given were erroneous; and fourth, the court erred when it refused to give seven of defendant's requested instructions.

February 7, 1958, defendant was charged in justice court with the crime of grand larceny—that he "did take, steal and carry away from the person of one Michael Joyce, certain personal property" — on or about February 2, 1958. March 17, 1958, the charge was reduced to petit larceny; defendant pleaded guilty and was sentenced to six months in the county jail, with credit for time served.

May 15, 1959, defendant was charged in two counts with second-degree assault—the first, committed upon Michael Joyce, on or about February 5, 1958, "by forcefully touching his person, with intent to commit a felony, to-wit, Robbery;" the second, committed upon Daniel Quiputla, with the same intent.

The charge of second-degree assault committed against Michael Joyce encompasses the acts of defendant used to support the previous charge of petit larceny, to which defendant pleaded guilty and for which he served a jail sentence.

Has defendant been in double jeopardy? We do not think so.

■ Double jeopardy does not exist where a defendant stands charged with different offenses, even though they arise out of the same act. *State v. Boren,* 42 Wn. (2d) 155, 164, 253 P. (2d) 939 (1953), and cases cited.

Double jeopardy does exist if the offenses are identical, or if a lesser offense can be said to be "a constituent element in the perpetration of the greater offense." *State v. Campbell,* 40 Wash. 480, 483, 82 Pac. 752 (1905). However, the offenses must be identical in both fact and law. *State v. Barton,* 5 Wn. (2d) 234, 105 P. (2d) 63 (1940); *State v.*

*Kingsbury,* 147 Wash. 426, 266 Pac. 174 (1928); see *State v. Schoel,* 54 Wn. (2d) 388, 341 P. (2d) 481 (1959).

■ The offenses involved in the instant case do not meet this test.

Second-degree assault, insofar as it is here applicable, is defined by statute.

"Every person who, under circumstances not amounting to assault in the first degree—

" . . .

"(6) Shall assault another with intent to commit a felony, . . .

"Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by fine of not more than one thousand dollars, or both." RCW 9.11.020.

RCW 9.54.010 defines larceny in general; RCW 9.54.090 sets forth specific acts constituting grand larceny and provides:

" . . .

"Every other larceny shall be petit larceny and shall be a gross misdemeanor."

Defendant pleaded guilty to petit larceny.

The gravamen of assault in the second degree is assault with *intent* to commit a felony; petit larceny is a taking of property.

The crimes are not identical in law; hence, defendant has not been in double jeopardy.

Defendant assigns error to six statements made by the deputy prosecuting attorney—one in his opening statement to the jury, the remainder in his closing argument—claiming they were prejudicial and denied him a fair trial.

■ The most recent statement of the rule applicable to this assignment of error is found in *State v. Cogswell,* 54 Wn. (2d) 240, 242, 339 P. (2d) 465 (1959), wherein this court said:

"As a general rule, this court will not consider an assignment of error based upon alleged misconduct of a prosecuting attorney unless the aggrieved party has made timely objection and requested an instruction that the jury disregard the incident. *State v. Taylor,* 47 Wn. (2d) 213, 287

P. (2d) 298 (1955). An exception to the rule is found in those cases where the misconduct has been so flagrant that an instruction could not cure it. *State v. Case,* 49 Wn. (2d) 66, 72, 298 P. (2d) 500 (1956), and cases cited. If such be the case, then the aggrieved party has not received a fair trial. See *Ryan v. Ryan,* 48 Wn. (2d) 593, 600, 295 P. (2d) 1111 (1956)." (Quoted with approval in *State v. Bowman,* 57 Wn. (2d) 266, 271, 356 P. (2d) 999 (1960).)

When the trial opened, the court told the jury, all of whom had had previous jury experience, that the opening statements of counsel were not to be considered "as testimony or evidence of any facts stated."

The deputy prosecuting attorney, in his opening statement, reiterated that "nothing that we say is evidence." He then gave a general outline of the facts the state expected to prove and closed by saying:

"After the evidence is in and under the instructions of the Court, I do not see how you folks, after careful deliberation, can reach any verdict other than guilty on both counts of assault in the second degree."

At the end of the trial, the deputy prosecutor reviewed the evidence and closed his opening argument to the jury with these words:

"The issues you have to resolve are very simple, but we believe there is sufficient evidence here so that you can resolve the issues, and if you consider the evidence fully, we believe that the evidence does justify a verdict of guilty on each count."

On both occasions, defense counsel objected to the expression of personal opinion by the deputy prosecutor and moved for a mistrial. On the same occasions, the court cautioned counsel that he could not argue his personal beliefs to the jury and instructed it to disregard these particular statements.

■ There is a distinction between the *individual* opinion of the prosecuting attorney (discussed at length in *State v. Case,* 49 Wn. (2d) 66, 298 P. (2d) 500 (1956)) and "an opinion based upon or deduced from the testimony in the

case." *State v. Armstrong,* 37 Wash. 51, 55, 79 Pac. 490 (1905).

When read in context, the quoted statements fall into the second category. Any prejudice resulting from them, however, was removed by the court's instruction that they be disregarded.

 Defendant's counsel made no objections to three statements of the deputy prosecutor to which error is now assigned. Conceding *arguendo* that they were erroneous, the exception to the rule is not applicable, for, when read in context, the statements were not so flagrant that an instruction could not have cured the error. See *State v. Case, supra.*

The final statement of the deputy prosecutor, to which defendant now assigns error, arose in the following manner. After the jury had retired to consider its verdict, defense counsel addressed the court as follows:

"May it please the Court, using the famous Case case, . . . [49 Wn. (2d) 66, 298 P. (2d) 500 (1956)] I would again object to counsel's argument that the State urges *that the defendant be sent to the penitentiary.* I feel that it is misconduct of counsel, urging it to the Court. Move for a mistrial on that basis. It cannot be corrected by any instructions to the jury." (Italics ours.)

Defendant testified in his own behalf. He testified about his incarceration in the county jail for petit larceny upon the 1958 justice court charge. He stated that he had been convicted "some ten times," but that *he had never been sentenced to the penitentiary.*

Defense counsel wove two thoughts through his argument to the jury: That defendant had pleaded guilty to petit larceny and served six months in jail for the incident upon which Count I is based—thus laying the foundation for the argument in support of the claim of double jeopardy; and that the state entertained some ulterior motive in bringing the assault charge based upon the same incident.

The court, on its own motion, interrupted argument of defense counsel and stated:

"He pled guilty to petty larceny and he is not being tried for that, and I will ask you not to so argue that to the jury."

Nevertheless, defense counsel continued:

"We have the two counts now before you. *I think you have seen the picture.* I think from what you may reasonably draw from the evidence, the reasonable inference to be drawn from the evidence as an over-all picture is *that of someone seeking blood. Why?*" (Italics ours.)

The backdrop painted by defense counsel presented a picture to which the deputy prosecutor was entitled to apply his brush if he so desired.

■ As a general rule, remarks of the prosecutor, including such as would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by defense counsel and where they are in reply to or retaliation for his acts and statements, unless such remarks go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them. See *State v. Wright,* 97 Wash. 304, 308, 166 Pac. 645 (1917).

In his closing argument, the deputy prosecutor replied:

". . . he has asked why the State has done this? Why are we trying to send him to the penitentiary, which, of course, is why he is here.
". . .
". . . and there is only one reason that he is here today, charged again with the same facts, *and that is what the evidence shows you;* that within two months of being released from the county jail on the prior assault, he was out doing it again. That is the only reason he his here today, charged with two counts of assault, second, and that is the reason why the State is asking you to send this man to the penitentiary." (Italics ours.)

■ We do not approve of counsel's mentioning the penitentiary, for, in a case such as this, the jury may not consider the possible penalty in determining defendant's guilt. *State v. Jensen,* 43 Cal. (2d) 572, 275 P. (2d) 25 (1954); see *State v. Ellsworth,* 40 Wn. (2d) 375, 242 P. (2d) 1019 (1952). It must be kept in mind, however, that it was defendant who disclosed that he had been convicted

ten times, that he had not been in the penitentiary, that he had served six months in the county jail, and that it was defense counsel who asked why somebody was "seeking blood."

In this circumstance, the statement of the deputy prosecutor was not so flagrant that an instruction could not have cured any possible error. No such instruction was requested. *State v. Case, supra*; *State v. Cogswell, supra*. Further, the court instructed the jury:

"You have nothing whatever to do with the punishment to be inflicted in case of a violation of law. The fact that punishment may follow a conviction cannot be considered by you except insofar, and only so far, as it may tend to make you careful."

Defendant assigns error to instructions Nos. 4 and 5 and to the court's refusal to give requested instructions Nos. 1 and 2. After defining the elements of the crime involved in each count, these instructions state that "it will be your *duty* to return a verdict of guilty" if the state has proved all the elements of the crimes beyond a reasonable doubt; but, if a reasonable doubt exists as to the establishment of any of the elements of the crimes, "you *should* return a verdict of not guilty." (Italics ours.)

To the purist, there may be a semantic difference between "duty to return a verdict" and "should return a verdict," but we are not convinced that the jury was misled as to its function under the law. A *duty* is that which a person is bound by obligation to do or to refrain from doing. *Should,* the auxiliary verb used with return, expresses more than futurity, as used here in demotic usage—it, too, expresses an obligation. We find no merit in this assignment of error.

Defendant assigns error to instruction No. 12 defining "reasonable doubt" and to the court's refusal to give proposed instruction No. 9. Instruction No. 12 has been approved by this court. *State v. Tanzymore,* 54 Wn. (2d) 290, 340 P. (2d) 178 (1959). Proposed instruction No. 9, although couched in different terms, adds nothing. We find no merit in this assignment of error.

Michael Joyce, the victim of the assault charged in Count I, did not testify at the trial. Defense counsel called him as a witness. The deputy prosecutor stated:

"There has been no return on this subpoena we issued for Mr. Joyce, your Honor. The Sheriff has been unable to find him. I think the record will show there is no return from the Sheriff."

Defendant's proposed instruction No. 6 would have informed the jury that if the state failed to call a witness— an actor in the transaction giving rise to the controversy— it must be presumed that the testimony of the witness would have been unfavorable to the state.

■ It was not error to refuse to give defendant's proposed instruction No. 6. Assuming that the situation is one in which an instruction concerning the presumption might have been given (a question we do not decide), it is sufficient to point out that the requested instruction does not state the law correctly; it is only the *unexplained* failure to call such a witness that *may* raise the presumption. *Wright v. Safeway Stores, Inc.*, 7 Wn. (2d) 341, 109 P. (2d) 542, 135 A. L. R. 1367 (1941), and cases cited; RCW 10.58.010.

The state's evidence, if believed by the jury, is sufficient to support the conclusion that defendant struggled with Michael Joyce; that he either snatched Joyce's wallet during the struggle or picked up the wallet and struggled with him in order to retain possession of it before fleeing.

The crux of the charge of second-degree assault against defendant, as we have pointed out heretofore, is assault with *intent* to commit a felony, to wit, robbery. RCW 9.11.020.

"Robbery" is defined as

". . . the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence . . . Such force or fear must be used *to obtain or retain* possession of the property, . . . . If used merely as a means of escape, it does not constitute robbery. . . ." RCW 9.75.010. (Italics ours.)

Defendant now urges that if force were used, it was used only as a means of escape; hence, there was no robbery and defendant could not be guilty of second-degree assault.

Based on this premise, defendant contends that the court erred (1) when it gave instruction No. 9 regarding the weight the jury may give to defendant's flight, omitting therefrom the statement that

"If force is used merely as a means of escape, it does not constitute robbery."

as requested in defendant's proposed instruction No. 3, and (2) when it refused proposed instructions Nos. 4 and 5 defining third-degree assault.

We cannot agree with defendant's contention.

Instruction No. 9, upon the question of flight, was not erroneous. There was evidence to justify the instruction. *State v. Lew,* 26 Wn. (2d) 394, 174 P. (2d) 291 (1946).

Defendant testified that he did not touch or strike Joyce. If the jury believed this, it would have had to find him not guilty under the instructions given it by the court. On the other hand, if the jury believed the state's evidence, it could find that force was used either to *obtain* or to *retain* possession of the wallet. In either of the latter situations, the force was not "used merely as a means of escape," but was sufficient to support a finding of an intent to commit robbery, as defined by statute. There is no evidence to support a finding of third-degree assault; hence, it was not error to refuse to give proposed instructions Nos. 4 and 5.

The judgment is affirmed.

MALLERY, HILL, DONWORTH, ROSELLINI, OTT, and FOSTER, JJ., concur.

FINLEY, C. J. (dissenting)—Appellant was found guilty of two counts of second-degree assault. As to Count I, charging assault with intent to rob Michael Joyce, appellant claims that he was denied the benefit of constitutional protection prohibiting "double jeopardy." Washington Constitution, Art. I, § 9. The rationalization by the majority of appellant's claim is quite orthodox and seems to be the prevailing rule for whatever significance that may be. The logic of the rule is perhaps flawless, but it seems to me the result is too harsh and legalistic and too little fair and

realistic. The approach taken by the majority has been criticized in the law reviews. See Lugar: Criminal Law, Double Jeopardy and Res Judicata, 39 Iowa L. Rev. 317, 344-347 (1954); and Kirchheimer: The Act, The Offense, and Double Jeopardy, 58 Yale L. J. 513 (1949).

The basic issue is: What is an offense within the meaning of the constitutional concept of former jeopardy? The majority's inarticulate major premise is that an offense is a violation of one of those categories designated by the legislature as a crime. If we use the premise that an offense includes all crimes against the same person, growing out of the same transaction or the same antisocial conduct, we reach a different result, and one which is in my opinion more in conformity with the intent of our constitutional protections against "double jeopardy." The prosecutor can of course charge a defendant with several crimes growing out of the same transaction by using separate counts in a single trial. But a defendant, once convicted, should not be forced to defend against a charge of another crime in a separate trial. The concept of former jeopardy should protect him from this, because he has already been tried for his offense.

Under the rule announced by the majority, a convicted defendant could be harassed again and again, depending upon the disposition of the particular prosecutor. He can be put to the trouble and the financial burden of defending charges in separate trials, not to mention the embarrassment or stigma of repeated criminal prosecutions. Further, punishment might be made cumulative by refusal to charge the defendant once and for all time with all the possible legal consequences of his antisocial conduct.

The same transaction test referred to above is not a new one. There is admittedly little, but some, support for it in the older cases. *State v. Mowser* (1919), 92 N. J. L. 474, 106 Atl. 416, 4 A. L. R. 695, is perhaps the most significant case emphasizing this test.

In a recent case on a related aspect of the problem the United States Supreme Court said:

"The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected

to the hazards of trial and possible conviction more than once for an alleged offense. In his Commentaries, which greatly influenced the generation that adopted the Constitution, Blackstone recorded:

" ' . . . the plea of *auterfoits acquit,* or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offence.'

"Substantially the same view was taken by this Court in *Ex parte Lange,* 18 Wall. 163, at 169:

" 'The common law not only prohibited a second punishment for the same offence, but it went further and forbid a second trial for the same offence, whether the accused had suffered punishment or not, and whether in the former trial he had been acquitted or convicted.'

*"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States* (1957), 355 U. S. 184, 187, 78 S. Ct. 221, 2 L. Ed. (2d) 199, 61 A. L. R. (2d) 1119. (Italics mine.)

I think what was said in the *Green* case is quite pertinent to the situation involved in the case at bar.

I have a healthy respect for the role of precedent in the development of our law. But when our cases expound a rule contrary to ordinary notions of fair play and justice, it is time to advocate another rule. I therefore dissent.

HUNTER, J., concurs with FINLEY, C. J.