[No. 38053.    En Banc.    August 17, 1967.]

GERARD N. FISHER *et al., Respondents,* v. J. LAEL SIMMONS, *Appellant.*\*

\*Reported in 431 P.2d 176.

*J. Lael Simmons,* pro se.

*John A. Bishop,* for respondent.

HILL, J.—This is an action by Gerard N. Fisher (a lawyer practicing in Kitsap County) to recover attorney's fees in the sum of $2,500 from J. Lael Simmons (a lawyer practicing in King County) for services rendered by the plaintiff for the defendant in certain litigation in Kitsap County.[1] The gist of the complaint is in the second paragraph which reads:

> That during the month of January, 1957, the defendant herein, J. Lael Simmons, retained the plaintiff herein, Gerard Fisher, to represent him in the case of J. Lael Simmons v. Russell L. Sweeney,[2] said case being filed in the Superior Court of the State of Washington for Kitsap County, under File Number #36628; that during the years of 1957, 1958, 1959 and 1960, the plaintiff herein performed legal services for the defendant of the reasonable value of $2,500.00.

The answer of the defendant, J. Lael Simmons, to this paragraph of the complaint was:

> In answer to paragraph II of plaintiff's complaint admits all matters contained therein except denies that the plaintiff performed legal services for the defendant of the reasonable value of $2,500.00

On these pleadings the issue as between the plaintiff Fisher and the defendant Simmons was a very simple one, *i.e.,* the value of the services rendered to the defendant by the plaintiff.

---

[1]Subsequently, by the pleadings of the defendant Simmons, his former law partner Leslie M. Yates together with his wife and the wife of the plaintiff were made parties. No reference will be made to the wives in this opinion, as we are concerned only with the actions and inactions of Gerard N. Fisher, J. Lael Simmons, and Leslie M. Yates.

[2]Should be *Sweany.*

It was this issue which the trial court decided, making the following findings of fact, *inter alia*:

That the defendant herein, J. Lael Simmons, retained the plaintiff, Gerard N. Fisher to represent him in the case of J. Lael Simmons, Plaintiff, v. Russell L. Sweany, Defendant, said case being filed in the Superior Court of the State of Washington for Kitsap County, under File No. #36628. (Finding No. 3)

That in the plaintiff's representation of the defendant, it was necessary to try two jury cases, consuming a total of five (5) days trial time, and that in addition thereto, the plaintiff spent in excess of 200 hours of briefing, arguing the various motions, demurrers and other matters arising during the course of the trial. (Finding No. 4)

That the Kitsap County Bar Association minimum fee schedule provides a minimum hourly charge of $16.00 per hour for an attorneys preparation and argument of any legal case. (Finding No. 5)

From these findings the trial court concluded that $2,500 was a reasonable fee for the services rendered by the plaintiff to the defendant and entered judgment accordingly. The defendant has appealed. His contention that the judgment is excessive can be quickly disposed of.

■ The fee allowed the plaintiff was large, if measured solely by the amount involved in the litigation between Simmons and Sweany, *i.e.*, $5,639.07. It was inadequate, if measured by the time and effort expended by the plaintiff. This is not a situation where Mr. Fisher had advised the litigation, but where his client (also a lawyer) had commenced the litigation and had asked for Mr. Fisher's assistance in its prosecution through two trials. Adequate compensation must have been contemplated, and the evidence does not support Mr. Simmons' suggestion that there had been a contingent fee arrangement.

The fact that the litigation, as conducted by Mr. Fisher, availed Mr. Simmons nothing was clearly not the fault of Mr. Fisher. The theory upon which the litigation had been prosecuted was selected by Mr. Simmons in the first instance, and if Mr. Simmons had no cause of action, as the

trial judge ultimately decided, it was through no fault of Mr. Fisher. If Mr. Simmons did have a cause of action and the trial court was in error, the right to appeal was lost due to the failure of Mr. Simmons' own associate, Mr. Yates, to prepare a brief. (See *Simmons v. Sweany* litigation section of this opinion.)

On the issue of whether the judgment was excessive, this case warrants no more than a per curiam opinion, stating that in the light of all the factors and standards to be considered in the fixing of a fee,[3] the evidence supports the findings of the trial court, and the findings support the judgment.

It is, however, further contended by Mr. Simmons that the trial court erred in refusing to recognize a last-minute shift of position by him, urging that the services rendered by Mr. Fisher had been rendered for the law partnership of Simmons and Yates (J. Lael Simmons and Leslie M. Yates),[4] and that though the partnership was now dissolved, the partnership obligation was joint and not several; and both partners being available, the plaintiff should have made them both parties to the action and asked for judgment against both of them.

To make clear that the trial court was justified in adhering to the theory upon which the case had been tried and in refusing to find that Mr. Fisher's services had been rendered to a partnership, requires extending this opinion considerably beyond where it should have terminated.

Some history of the two actions brought by J. Lael Simmons against Russell L. Sweany is necessary. The second action was the one in which Mr. Fisher performed the services for which he brought the present action.

---

[3]See Canon of Professional Ethics 12, RCW vol. 0; Annotation, 143 A.L.R. 672; *Kimball v. Public Util. Dist. No. 1 of Douglas Cy.*, 64 Wn.2d. 252, 391 P.2d 205 (1964); *Ryan v. Ryan*, 48 Wn.2d 593, 599, 295 P.2d 1111 (1956).

[4]The firm name at the time Mr. Fisher was retained as counsel seems to have been Simmons, Simmons & Yates, as indicated by the notice of Mr. Fisher's first association as counsel in the case of *Simmons v. Sweany*.

*The Simmons-Sweany litigation:*

The first action (Kitsap County cause No. 33988) was commenced by J. Lael Simmons in August, 1954 (Simmons & Yates being the attorneys for the plaintiff). From the complaint and attached exhibits, it appeared that on June 15, 1954, George P. Rossman and wife had assigned to "J. Lael Simmons for himself and as trustee for the use and benefit of third parties," all funds arising out of the sale of certain real property belonging to them. The assignment stated that the sum assigned would be in the neighborhood of $11,000, but that $5,000 was to be retained by the real-estate broker until the Rossmans surrendered possession to the purchasers.

It was further alleged that on June 16, 1954, Russell L. Sweany, the real-estate broker, had accepted the assignment and agreed to honor the same, and that in violation of his agreement Sweany had transferred the funds to the assignors. The prayer was for $5,000.

In response to a demand for a Bill of Particulars, Mr. Simmons stated that the amount he was entitled to receive "for services rendered and as trustee for third persons was the sum of $7,373.71", and then he set forth,

[T]he amount of the respective claims together with respective claimants:

| | |
|---|---|
| J. Lael Simmons | $3445.46 |
| Dr. Bloomquist | 111.25 |
| R. P. Ryan | 85.31 |
| Ainsworth Grocery | 50.00 |
| Howe Oil Company | 151.82 |
| Howe Motor Company | 5.41 |
| National Bank of Commerce, 1st So. & Stacey St. Branch | 3524.46 |
| Total | $7373.71 |

The Bill of Particulars further indicated that Sweany, as the broker, had received $10,639.07 of which $5,000 was paid to Simmons and the balance ($5,639.07) was paid to George P. Rossman, one of the assignors.

The Rossmans were brought in as additional defendants by the defendant Sweany. There was considerable legal skirmishing, but the case was never tried.

In December, 1956, there was a motion to dismiss for "want of prosecution." It was in connection with the hearing on this motion that Mr. Fisher first came into the case, notice being given by Simmons, Simmons & Yates, under date of January 8, 1957, that Gerard Fisher had been associated with them in the prosecution of the case.

The motion to dismiss was granted, and the action was dismissed January 28, 1957.

The second action (Kitsap County Superior Court cause No. 36628) was commenced by the filing of a complaint, verified by Mr. Simmons April 4, 1957. This complaint was prepared by Mr. Fisher, but under instructions to pattern it after the complaint in the first action.

A demurrer to this complaint was sustained October 28, 1957. An amended complaint was prepared by Mr. Fisher which alleged the Rossman assignment to the plaintiff Simmons, acceptance of the assignment by Sweany, and the payment by him to the Rossmans of $5,639.07, for which amount judgment was asked against Sweany.

The Rossmans were again made additional defendants by the defendant Sweany, and again there was considerable legal skirmishing between all parties.

The case came on for trial before a jury on October 21, 22, and 23, 1958. The jury brought in a verdict for the defendant Sweany.

Mr. Fisher successfully argued a motion for a new trial.

The case was again tried in November, 1959, and this time the jury brought in a verdict for Simmons of $5,639.07, together with interest at 6 per cent from July 17, 1954.

The Kitsap County Superior Court granted the defendant Sweany's motion for judgment notwithstanding the verdict April 11, 1960.

Notice of appeal was timely given and a statement of facts was secured. Mr. Yates agreed to prepare the brief, but failed to do so though Mr. Fisher secured some seven extensions of time for filing it. There can be no gainsaying that Mr. Yates' failure to prepare a brief was the reason for the dismissal of the appeal in May, 1961.

*The present action:*

The appeal (Simmons v. Sweany) being dismissed through no fault of Mr. Fisher, he sent a bill to Mr. Simmons; and when it was not paid, commenced the present action, asking $2,500 for his services.

At the beginning of this opinion, we referred to the pleadings upon which this case was decided by the trial court. Mr. Simmons, however, had included in his answer three requests for affirmative relief which are eloquent as to his then views of who owned the chose in action upon which the two cases against Sweany had been predicated, *i.e.,* his right under the assignment to the $5,639.07, which Sweany had paid to the assignor instead of to Mr. Simmons.

There was certainly nothing in Mr. Simmons' answer to indicate that Mr. Fisher had been employed by and had worked for a partnership.

The affirmative pleadings by the defendant made it very clear that Mr. Simmons felt that *he,* not some partnership, had lost the benefit of that jury verdict of "$5,639.07 together with interest thereon at six percent per annum from July 17, 1954."

By his first counterclaim, Mr. Simmons asked for a judgment in that amount against Mr. Fisher because he had—in his capacity as an attorney for the defendant (Mr. Simmons)—performed his duties in a negligent manner.

By his second counterclaim, Mr. Simmons asked for a judgment against both Mr. Fisher and Leslie M. Yates (the former partner of Mr. Simmons) in the same amount because they, in their capacities as attorneys, had negligently performed their duties to the defendant (Mr. Simmons).

By a third affirmative pleading, Mr. Simmons asked for a judgment in the same amount against Leslie M. Yates, his former partner, because, in his capacity as attorney or as agent for the defendant (Mr. Simmons), he had performed his duties in a negligent manner.

Mr. Yates is referred to as an attorney or agent, but nowhere as a partner having an interest in the "$5,639.07

together with interest thereon at six percent per annum from July 17, 1954," for which the action had been brought.

On the motion for summary judgment, the first counterclaim and second counterclaim, insofar as they related to Mr. Fisher, were dismissed with prejudice on March 15, 1963. There has been no appeal from that summary judgment.

This left the case for trial on the issues raised by the complaint and answer and the defendant's third-party claim against the third-party defendant Yates, which Mr. Simmons voluntarily dismissed during the trial.

Our earlier statement that the defendant made a last-minute change in his position is borne out not only by his pleadings in the two actions against Russell L. Sweany and his pleadings in the present case, but also by the trial proceedings in the present case. Not until page 80 in the 104-page statement of facts (and after the close of the plaintiff's case) does Mr. Simmons begin to urge his claim that the plaintiff's services were for the partnership of Simmons and Yates.

Mr. Fisher had testified that Mr. Yates, a long-time friend, had asked him to assist in this Kitsap County litigation (Simmons v. Sweany) and, after the dismissal of the first case against Sweany, Mr. Fisher had taken over the laboring oar in the second case—from the preparation of the pleadings through to the giving of the notice of appeal. There had been no discussion of fees. Mr. Fisher had assumed that, in acting as attorney for the plaintiff in the Simmons-Sweany litigation, the plaintiff, J. Lael Simmons, was his client. Mr. Fisher's office record (exhibit No. 5) shows that the name on the client's card had always been "Simmons, J. Lael" from the first entry, January 8, 1957.

If there had been any question in Mr. Fisher's mind as to whether he had been performing services for someone other than J. Lael Simmons, the latter's answer to the complaint in this action, which we have heretofore quoted, would have removed it.

At the conclusion of the plaintiff's case, Mr. Simmons moved to amend the pleadings to conform to the proof; and that motion was granted.

Mr. Simmons then moved for an order allowing him to amend his answer to include a plea in abatement, his position being that "Les Yates was a known party and has not been sued by Mr. Fisher, although he knew he was a partner."

The court denied the motion.

Mr. Simmons then moved to dismiss his third-party claim against Mr. Yates. That motion was granted.

The attorney for Mr. Fisher, after pointing out that issues were being raised that should have been raised "a considerable time ago," and not at the trial, finally moved to make Mr. Yates a party defendant.

The effect of the motion and the trial court's granting it, was not an abandonment of Mr. Fisher's claim against Mr. Simmons as the person for whom his services had been rendered, but as a precaution, so that in the event the trial court should find that the partnership had retained him, he could say that both partners had been made defendants.

Mr. Yates then asked for 30 days to plead, and this request was granted. Whereupon, after a discussion between Mr. Fisher and his attorney, the latter said, "I think we will waive it as to Mr. Yates and proceed."

Mr. Simmons interpreted this as dismissal of Mr. Yates and moved for a dismissal of the Fisher action on the theory that dismissing one partner precluded a recovery against the other.

The statement by Mr. Fisher's attorney, as we view the record, was not a dismissal of Mr. Yates, but a declaration that rather than wait for him to plead Mr. Fisher would waive any judgment at that time against Mr. Yates and let the court rule on his right to a judgment against Mr. Simmons.

The trial court refused to grant Mr. Simmons' motion to dismiss the action, and thereafter Mr. Simmons testified,

explaining the litigation between himself and Mr. Sweany. Included in his testimony was the significant statement:

> I did rely upon the selection of Mr. Fisher by Mr. Yates as my legal representative, and he did bring this action which resulted in a verdict favorable to me.

It is not clear whether Mr. Simmons regarded this as a partnership obligation, because (a) the chose in action against Sweany belonged to the partnership and, thus, Mr. Fisher was rendering his services to the partnership;[5] or because (b) when Mr. Yates enlisted the aid of Mr. Fisher it was on behalf of the partnership of Simmons and Yates who were then representing Mr. Simmons in his personal litigation.[6]

The effect of Mr. Simmons' motions and the court's rulings left the case in this posture: The fact that the pleadings had been amended to conform to the proof, did not mean that a partnership obligation had been established. The trial court could have found, and did, that Mr. Fisher had rendered his services to Mr. Simmons as an individual and, if so, the only issue was their value. If the trial court had found that Mr. Fisher had rendered his services to the partnership of Simmons and Yates, then, in addition to the issue as to their value, there would have been an issue as to the effect of a failure to take a judgment against Mr. Yates after he had been made a party.

We do not reach the latter issue, because the trial court very clearly found that the obligation to pay Mr. Fisher for

---

[5] Which is not consistent with Mr. Simmons' position in the Simmons-Sweany litigation or in the present case; further, if the partnership had, in fact, been the real party in interest, the right of Mr. Simmons to maintain the action without joining the other partner (or partners) would seem to be open to question. See *Peck v. Better Business Standards Ass'n., Inc.*, 44 Wn.2d 804, 271 P.2d 697 (1954); *Seltzer v. Chadwick*, 26 Wn.2d 297,173 P.2d 991 (1946).

[6] Which is certainly no more than an inference which might, but need not, be drawn from the circumstances.

It is entirely possible that under such circumstances Mr. Fisher could have had a cause of action against both Mr. Simmons and the partnership; against Mr. Simmons for the services rendered to Mr. Simmons, and against the partnership at whose request the services were rendered.

his services was not a partnership obligation, but the personal obligation of Mr. Simmons. Finding of fact No. 3, heretofore quoted, cannot be otherwise construed.

The record supports the trial court in its finding that Mr. Fisher was retained by Mr. Simmons, and that the reasonable value of his services was $2,500.

Judgment affirmed.

FINLEY, C. J., DONWORTH, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

WEAVER, J. (dissenting)—I have the misfortune to differ with the majority and I do so with a deep sense of the probability that it is right. My "deep sense" is fortified by the fact that the case was first argued to a department of this court and then reargued en banc. I found few in agreement with my thesis.

The majority opinion, however, recognizes that it is possible that

> when Mr. Yates *enlisted the aid* of Mr. Fisher it was on behalf of the partnership of Simmons and Yates who were then representing Mr. Simmons in his personal litigation. (Italics mine.)

As I read the record, it supports this conclusion. Ownership of the cause of action is not material. Thus the employment of Mr. Fisher was by the partnership of Simmons and Yates and responsibility for attorney fees due Mr. Fisher became a partnership obligation of Simmons and Yates.

The question involves (a) the rule at common law; (b) a portion of the Washington Uniform Partnership Act (RCW 25.04.150); (c) a statutory procedural modification when an action is against two or more defendants *jointly* indebted (RCW 4.28.190); and (d) Rule of Pleading, Practice and Procedure 19(a) and (b), RCW vol. 0. It would be asking too much to expect that all four would fall into a consistent pattern.

At common law (*Warren v. Rickles,* 129 Wash. 443, 449, 225 Pac. 422 (1924); 40 Am. Jur. *Partnership* § 189, p. 260)

the partnership obligation was joint. It was not joint and several.

The state's adoption of the Uniform Partnership Act (Laws of 1945, ch. 137, § 15, p. 355; Laws of 1955, ch. 15, p. 127; RCW 25.04.150) did not materially change the rule.

The severity of the common law rule that all joint obligors must be joined as parties else there is no right to sue is discussed in 39 Am. Jur. *Parties* § 37, p. 906, and 68 C.J.S. *Partnership* § 214 b., p. 692.

Since the Code of 1881, § 68, p. 46 (reenacted by Laws of 1893, ch. 127, § 13, p. 411), now RCW 4.28.190, there has been a statutory modification of the common law *procedure.* It has been implemented, with slight changes, by Rule of Pleading, Practice and Procedure 19(a) and (b), RCW vol. 0.

I fail to find that either the statute or rule of court can be of solace to the plaintiff (respondent). Because Mr. Yates was a friend and classmate of plaintiff's, he specifically chose to sue only one of the joint obligors when the other joint obligor (Mr. Yates) was not only within the jurisdiction but physically present in court.

In the present posture of this case, it would add nothing to the decisional law of this jurisdiction for me to expand upon the authorities I have cited, for their application depends, as I pointed out at the beginning, upon an interpretation of the facts.

I would, however, suggest that it was error to enter judgment on a joint obligation against defendant Simmons. I would reverse and remand with directions to dismiss the action.

December 11, 1967. Petition for rehearing denied.