FILED
COURT OF APPEALS
DIVISION II

2015 APR 21 AM 9: 02

STATE OF WASHINGTON

BY_____
           DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45225-1-II |
| Respondent, | |
| v. | |
| KELLY KATHLEEN STULTZ, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Kelly Kathleen Stultz appeals her conviction for possession of a controlled substance (methamphetamine) after a stipulated facts trial. She argues that her conviction must be reversed because the trial court erred in admitting physical evidence obtained pursuant to an unlawful *Terry*[1] stop. Holding that the *Terry* stop was lawful, that Stultz validly consented to the search of her car, and that her consent was not testimonial, we affirm.

## FACTS

### I. Stultz's Arrest and Search Of Her Car

Bainbridge Island Officers Victor Cienega and Aimee LaClaire responded to a report of a person "passed out" in a car in the parking lot of an apartment complex. Clerk's Papers (CP) at 58 (Amended Finding of Fact (FF) 1). The person in the car was Stultz and she later told LaClaire that she had been at the complex to visit her friend, a person Cienega was familiar with due to "a lot of narcotics activity" in relation to the apartment number that Stultz named. Verbatim Report of Proceedings (VRP) (May 7, 2013) at 47. The officers were dispatched to conduct a

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

welfare check at 10:00 PM; the car had been in its location since 3:00 PM with several people coming and going from the car to the apartment.

When the two officers approached the car, Stultz was reclined in the driver's seat with a coat covering her from her knees to her face. LaClaire knocked on the passenger window for 20 to 30 seconds before Stultz awoke and opened the passenger door. LaClaire then asked for identification, which Stultz provided.

As Stultz reached for the passenger door to open it for LaClaire, Stultz's coat slid up on her legs and Cienega, standing at the driver's side window with his flashlight shining on Stultz, saw what he believed to be a glass methamphetamine pipe between Stultz's legs. About an inch of the pipe was sticking out with the bowl wrapped in a paper towel and Cienega could see white residue in the pipe. Cienega, who recently had taken a training course with a regional narcotics task force, believed that the pipe was used to smoke methamphetamines.

Through the closed window, Cienega told Stultz that he saw the pipe and that she needed to get out of the car. Stultz tried to cover the pipe with her hands, but Cienega told her that he "already [saw] the pipe" and told her again to exit the car. VRP at 40. Because he saw the pipe, felt "uncomfortable," and wanted to confirm his belief as to what the object was, Cienega placed Stultz in handcuffs immediately after she stood up out of the car. VRP at 41, 42. Cienega did not tell Stultz that she was under arrest. As he placed her in handcuffs, Cienega saw an open soft cloth pouch laying on the floorboard of the car. Inside the pouch, Cienega observed five baggies of the type typically used to store narcotics. One of the baggies contained a substance that Cienega believed to be methamphetamine based on his training and experience.

2

Cienega then asked Stultz about the pipe, told her that he saw the baggies, and asked whether the substance was methamphetamine; Stultz said that it was. Cienega asked if she had any more drugs or drug paraphernalia in the car. Stultz replied "no" and said the officers "could search the vehicle."[2] VRP at 45. Cienega removed the pipe and pouch from the front seat and floorboard, and searched the rest of the car. After placing the pouch with the baggies and the pipe on the car roof, Cienega told Stultz that she was under arrest and read the *Miranda*[3] warning to her. LaClaire ran Stultz's name and found outstanding warrants for Stultz's arrest. Stultz admitted to LaClaire that she had ingested methamphetamine.

## II. CrR 3.5 & CrR 3.6 Hearing; Stipulated Facts Trial

The State charged Stultz with one count of possession of a controlled substance (methamphetamine). Stultz moved to suppress the pipe, pouch, and baggies and her statements to Cienega after he handcuffed her. At the first CrR 3.5 and CrR 3.6 hearing, the trial court suppressed Stultz's statements to Cienega that she did not have any other drugs in the car and that the officers could search the car because these statements were obtained in violation of *Miranda*. The trial court also suppressed the physical evidence because Stultz's consent was tainted by the lack of a *Miranda* warning.

The State moved for reconsideration. The trial court reversed its earlier ruling and concluded that because Stultz was lawfully seized during a *Terry* stop and she consented to the

---

[2] The trial court found that Stultz answered Cienega's question about additional paraphernalia by answering, "'no, go ahead and search.'" CP at 59-60 (FF 10).

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

warrantless search of her car, the pipe, pouch, and baggies were admissible. The court entered amended findings of fact and conclusions of law.

The trial court found Stultz guilty in a stipulated facts trial. Stultz appeals.

ANALYSIS

We review a trial court's ruling on a motion to suppress evidence to determine whether substantial evidence supports the trial court's findings of fact and whether those findings, in turn, support the trial court's conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Unchallenged findings of fact are verities on appeal. *State v. Bonds*, 174 Wn. App. 553, 563, 299 P.3d 663 (2013), *review denied* 178 Wn.2d 1011. We review conclusions of law de novo to determine if the conclusions of law are supported by the findings of fact. *Russell*, 180 Wn.2d at 866-67. Substantial evidence is evidence that is sufficient "'to persuade a fair-minded person of the truth of the stated premise.'" *Russell*, 180 Wn.2d at 866-67 (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)).

Substantial evidence supports the trial court's challenged findings of fact and those findings of fact support the court's amended conclusions of law. In granting the State's motion to reconsider, the trial court correctly ruled that the pipe, pouch, and baggies were admissible against Stultz.

## I. Findings Of Fact

Stultz assigns error to four of the trial court's amended findings of fact:[4] (1) that Cienega "immediately recognized" the object between Stultz's legs as a methamphetamine smoking pipe (CP at 59 (FF 6)), (2) that as Stultz got out of the car, Cienega saw the pipe and the pouch with the baggies that he believed contained methamphetamine (FF 9), (3) that after Cienega told Stultz he saw the pipe and pouch and asked her if she had more paraphernalia in the car, she answered, "'no, go ahead and search'" (CP at 59-60 (FF 10)), and (4) that Stultz waived her *Miranda* rights by making statements to LaClaire (FF 13). Substantial evidence supports each of these amended findings of fact.

### A. Cienega Saw a Glass Pipe and White Residue—Amended Finding Of Fact 6

Substantial evidence supports the trial court's amended finding of fact 6 that Cienega "immediately recognized" the object between Stultz's legs as a methamphetamine smoking pipe that had white residue in the stem. CP at 59 (FF 6). Officer Cienega testified that when Stultz leaned over to open the door for LaClaire, Stultz's coat slipped up on her legs. With his light shining into the car, Cienega saw what he believed was a methamphetamine smoking pipe between Stultz's legs. The trial court's amended finding of fact 5 stated that Cienega described the object between Stultz's legs as "the stem of a glass pipe" and "white residue inside the stem." CP at 59. Stultz does not challenge amended finding of fact 5. Based on Cienega's testimony about his training and experience, a fair-minded person could conclude that Cienega "immediately recognized" that the object between Stultz's legs was a methamphetamine smoking pipe by his description of the object. (CP at 59 (FF 6).

---

[4] Stultz challenges amended findings of fact 6, 9, 10 and 13 (CP 59-60). Br. of Appellant at 1.

B. Cienega Saw the Pipe, Pouch, and Baggies as Stultz Exited Her Car—Amended Finding Of Fact 9

A fair-minded person could also conclude that when Stultz got out of the car, Cienega saw the pouch with the baggies containing what he "believed" was methamphetamine and recognized what he saw. CP at 59 (FF 9). Cienega testified that something "caught [his] attention" as he placed Stultz in handcuffs and he described what he saw as a "soft gray pouch . . . and the flap was actually open and there was five baggies, typically used for narcotics." VRP at 43. Cienega believed the substance in one of the baggies to be methamphetamine. Substantial evidence supports amended finding of fact 9.

C. Stultz Consented to a Search Of Her Car—Amended Finding Of Fact 10

Stultz next challenges the trial court's amended finding of fact 10, that Stultz answered Cienega's question about more paraphernalia inside the car by responding, "no, go ahead and search." CP at 59-60. Cienega testified that after he asked Stultz if she had more narcotics or paraphernalia in the car, Stultz said, "no, she [Stultz] said that was it, and we could search the vehicle." VRP at 45. Although the trial court's amended finding of fact did not quote precisely what Cienega testified that he heard Stultz say, substantial evidence supports amended finding of fact 10.

### D. After Being Advised Of Her *Miranda* Rights, Stultz Made Statements to LaClaire—Amended Finding Of Fact 13

Lastly, Stultz challenges amended finding of fact 13, which found that after Cienega read Stultz her *Miranda* warnings she waived those rights and made statements to LaClaire. The findings of fact do not specify these statements, but substantial evidence supports the finding that Stultz continued to talk with LaClaire after she received *Miranda* warnings. Although LaClaire could not remember exactly when Stultz admitted to ingesting methamphetamine, Cienega testified that Stultz had not made that statement to him. Cienega testified that he did not talk to Stultz after he read Stultz the *Miranda* warning, but that LaClaire and Stultz continued to have a conversation. A fair-minded person, considering the totality of both officer's testimonies, could conclude that Stultz made statements to LaClaire after Cienega read the *Miranda* warning to her. Substantial evidence supports amended finding of fact 13.

### II. Conclusions Of Law

Stultz also challenges five of the trial court's amended conclusions of law:[5] (1) that Cienega lawfully seized Stultz during a valid *Terry* stop when he ordered her to exit the car (CL 4), (2) that Cienega had probable cause to arrest Stultz when he handcuffed her (CL 5), (3) that Cienega's warrantless search of Stultz's car was based upon the consent exception to the warrant

---

[5] Stultz challenges amended conclusions of law 4, 5, 9, 10 and 11 (CP 60-61). Br. of Appellant at 1.

No. 45225-1-II

requirement (CL 9), (4) that Stultz's consent was not testimonial (CL 10), and (5) that the evidence obtained from Stultz's consent to search was admissible (CL 11).[6] Because the trial court's amended findings of fact support these conclusions of law, the trial court on reconsideration properly ruled that the pipe, pouch, and baggies were admissible.

Generally, warrantless searches and seizures are per se unreasonable and violate the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). "'[A] few jealously and carefully drawn exceptions'" apply to the general rule against warrantless searches and seizures. *Garvin*, 166 Wn.2d at 249 (quoting *State v. Duncan*, 146 Wn.2d 166, 171-72, 43 P.3d 513 (2002). The relevant exceptions in this case are: (1) *Terry* stops; (2) searches incident to a valid arrest; (3) plain view; and (4) consent. *Garvin*, 166 Wn.2d at 249-50; *State v. O'Neill*, 148 Wn.2d 564, 588, 62 P.3d 489 (2003). "The State bears a heavy burden to show the search falls within one of these 'narrowly drawn' exceptions." *Garvin*, 166 Wn.2d at 250 (quoting *State v. Jones*, 146 Wn.2d 328, 335, 45 P.3d 1062 (2002)).

A. Cienega Lawfully Detained Stultz During a *Terry* Stop—Amended Conclusion Of Law 4

Stultz argues that Cienega seized her unlawfully by exceeding the scope of a valid *Terry* stop. We disagree.

_____

[6] Stultz also assigns error to the trial court's amended conclusion of law 3 that LaClaire's request for Stultz's identification was an unlawful seizure, but she does not provide any further argument on that issue. Br. of Appellant at 1. We do not further address Stultz's assignment of error to conclusion of law 3. We note, however, that under these facts the trial court correctly cited *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003) for authority that Stultz was not seized when LaClaire asked her for identification.

8

An officer may conduct a *Terry* stop when the officer has reasonable, articulable suspicion based on "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants an intrusion.'" *State v. Snapp*, 174 Wn.2d 177, 197, 275 P.3d 289 (2012) (quoting *Terry*, 392 U.S. at 21). The officer must have articulable suspicion of a substantial possibility that criminal conduct has occurred or is about to occur. *Snapp*, 174 Wn.2d at 197-98. Reasonable articulable suspicion is determined by a totality of the circumstances. *Snapp*, 174 Wn.2d at 198. An officer's actions must be "justified at their inception" for a *Terry* stop to be valid. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). The scope of a *Terry* stop may be enlarged if the officer obtains or confirms more suspicions during the investigation. *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003).

Cienega and LaClaire conducted a welfare check after receiving a report of a person "passed out" in a car and that people had been coming and going from that car into an apartment in a complex that the officers were familiar with due to past drug activity. Stultz does not challenge amended conclusion of law 2, that Cienega's and LaClaire's initial interactions with Stultz (shining their lights into the car and rapping on the car windows) were appropriate.

As we conclude above, substantial evidence supports the trial court's finding that when Cienega saw the glass object with white residue inside the stem between Stultz's legs as she reached to open the passenger door for LaClaire, he immediately recognized what he believed to be a methamphetamine smoking pipe. Cienega had recently finished a training course with a regional narcotics task force. At that point, based on the totality of the circumstances, Cienega had reasonable, articulable suspicions that Stultz was engaged in unlawful activity—that she was

in possession of drug paraphernalia and intended to use it to consume a controlled substance.[7] Cienega's subsequent detention of Stultz was thus reasonable. The trial court's amended findings of fact support its conclusion that Cienega seized Stultz within the scope of an appropriate *Terry* stop based on specific and articulable suspicions of criminal activity.

B. Cienega Had Probable Cause to Arrest Stultz—Amended Conclusion Of Law 5

Stultz argues that Cienega did not have probable cause to arrest her. We disagree.

An officer may arrest a person without a warrant if the officer has probable cause to believe the person has committed a crime. *State v. Rose*, 175 Wn.2d 10, 22, 282 P.3d 1087 (2012). Probable cause requires a showing that "'the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.'" *State v. Barron*, 170 Wn. App. 742, 750, 285 P.3d 231 (2012) (quoting *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986)). Probable cause is determined by a totality of the circumstances. *Barron*, 170 Wn. App. at 750.

The trial court's amended findings of fact 6 and 9 about Cienega's observations of the pipe, pouch, and baggies would lead a reasonable person, with Cienega's training and experience, to believe that Stultz had committed a crime. Cienega thus had probable cause to arrest Stultz before he placed her in handcuffs when he observed the pipe in her lap and as she got out of the car. The

---

[7] The City of Bainbridge Island's Municipal Code prohibits possession of "any drug paraphernalia ... with the intent to use [it] ... for ... consuming controlled substances." Ord. 85-08 § 2, 1985; BIMC 9.07.020. See http://www.codepublishing.com/wa/bainbridgeisland/ (viewed Feb. 19, 2015).

trial court's amended findings of fact support amended conclusion of law 5 that Cienega had probable cause to arrest Stultz when he placed her in handcuffs.[8]

C. Stultz Validly Consented to Cienega's Warrantless Search—Amended Conclusions Of Law 9 and 11

Stultz challenges the trial court's amended conclusion of law 9, that Cienega's warrantless search of Stultz's car was based upon the consent exception to the warrant requirement, and amended conclusion of law 11 that the pipe, pouch, and baggies were obtained as a result of her voluntary consent was admissible.[9] We disagree.[10]

The State must show by clear and convincing evidence that a person's consent to a warrantless search was given "freely and voluntarily" and was not the product of coercion or duress, express or implied. *O'Neill*, 148 Wn.2d at 588; *Russell*, 180 Wn.2d at 867. This is a "heavy burden." *Russell*, 180 Wn.2d at 867. Consent is a question of fact determined by a totality of the circumstances rather than merely applying a multifactor analysis. *O'Neill*, 148 Wn.2d at 589. Factors which may be considered include: (1) whether the officer gave the person *Miranda* warnings before the consent to search, (2) the degree of the person's education and intelligence,

---

[8] Stultz argues that Cienega did not have probable cause to arrest her because Cienega testified that he did not believe that he had probable cause when he handcuffed her, but that he had probable cause once he removed the evidence from Stultz's car. We review conclusions of law de novo based on findings supported by substantial evidence. *Russell*, 180 Wn.2d at 866-87. Because the trial court correctly concluded that Cienega had probable cause and the findings support that conclusion, Cienega's opinion is irrelevant.

[9] Stultz incorrectly argues that her consent was tainted by an illegal arrest. As explained above, Cienega had probable cause to arrest Stultz.

[10] For the first time on appeal, the State argues that Cienega lawfully seized the pipe, pouch, and baggies pursuant to a search incident to arrest. Because we hold instead that Stultz validly consented to Cienega's search, we do not address this argument.

11

(3) whether the officer advised the person of his or her right to consent, (4) whether the person was cooperative, (5) whether the person refused consent before granting it, (6) how many times the officer asked for consent to search, and (7) whether the person was restrained. *O'Neill*, 148 Wn.2d at 588; *State v. Dancer*, 174 Wn. App. 666, 676, 300 P.3d 475 (2013), *review denied* 179 Wn.2d 1014. No one factor is dispositive. *Russell*, 180 Wn.2d at 872.

Stultz argues that: (1) Cienega did not give her *Miranda* warnings until after she said "no, go ahead and search," (2) the trial court did not make findings on her education or intelligence, (3) LaClaire testified that Stultz appeared "confused" when she spoke to her,[11] (4) the officers did not tell Stultz that she could refuse to consent, and (5) she was in handcuffs with at least three officers present when she consented. Br. of Appellant at 7-8. Stultz, however, ignores other factors demonstrating that her consent was voluntary, including (1) *Miranda* warnings were not given nor required before Stultz said, "[G]o ahead and search," and this finding of fact is supported by substantial evidence[12] (CP at 59 (FF 10)), (2) Stultz was cooperative throughout her interactions with Cienega and LaClaire,[13] (3) Stultz granted consent after Cienega told her that he saw the pipe in her lap and she had tried to cover it with her hands, and (4) despite the presence of three officers,

---

[11] LaClaire testified that Stultz appeared "to be a little bit confused based on her not knowing how long she had been in the car or, you know, why she was in the vehicle." VRP at 17. This testimony does not suggest that Stultz was *unable* to consent or that she did not understand the statements she made, including her grant of consent.

[12] Law enforcement officers are not necessarily required to give *Miranda* warnings or advise a person of his or her right to refuse consent before that person may voluntarily consent to a search. *Dancer*, 174 Wn. App. at 676; *State v. Rodriguez*, 20 Wn. App. 876, 880, 582 P.2d 904 (1978).

[13] LaClaire testified that Stultz was "compliant, courteous, [and] easygoing." VRP at 17. A separate finding of fact is not required regarding Stultz's intelligence or education; the trial court's finding that Stultz voluntarily consented to the search under the totality of the circumstances is otherwise supported by the record.

even if Stultz had been under arrest at the time she gave consent, that circumstance alone would not have been sufficient to conclude that her consent was coerced.[14] The totality of the circumstances support the trial court's findings that Stultz consented voluntarily.

The trial court's conclusions of law 9 and 11, that Stultz consented to Cienega's warrantless search, that the search was lawful, and that the evidence seized during that search was admissible, were proper and supported by the amended findings of fact.

D. Stultz's Consent Was Not Testimonial—Amended Conclusion Of Law 10

Stultz also argues that 1) she was compelled to tell Cienega, "go ahead and search," 2) this statement was testimonial evidence that violated her Fifth Amendment rights, and 3) the incriminating physical evidence (pipe, bag, and baggies) should be suppressed. We disagree.

Article I, section 9 of the Washington Constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself." Const. art. I, § 9. The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Our Supreme Court interprets these two constitutional provisions consistently. *State v. Unga,* 165 Wn.2d 95, 100, 196 P.3d 645 (2008). The right against self-incrimination is intended to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of the person's mind or speak his or her guilt. *State v. Mendes,* 180 Wn.2d 188, 195, 322 P.3d 791 (2014).

Stultz's statement to Cienega, "go ahead and search" was not testimonial because it did not "speak [her] guilt." *Mendes,* 180 Wn.2d at 195. We have already concluded that the trial court

---

[14] A person may voluntarily consent to a warrantless search while he or she is under arrest. *State v. Johnson,* 104 Wn. App. 409, 421-22, 16 P.3d 680 (2001).

No. 45225-1-II

correctly concluded that Stultz validly consented to the search of her car. And, contrary to Stultz's claim, a consent to search is not testimonial evidence, which implicates the Fifth Amendment, simply because that consent leads to incriminating evidence. *State v. Rodriguez*, 20 Wn. App. 876, 880, 582 P.2d 904 (1978). *Miranda* warnings are not a prerequisite to a grant of voluntary consent. *Rodriguez*, 20 Wn. App. at 880. The trial court did not error in amended conclusion of law 10 that Stultz's consent was not testimonial.

The trial court's amended findings of fact 6, 9, 10 and 13 are supported by substantial evidence and those amended findings support the trial court's amended conclusions of law 4, 5, 9, 10 and 11. Holding that the *Terry* stop was lawful, that Stultz validly consented to the search of her car, and that her consent was not testimonial, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, J.

Melnick, J.

14